Good morning. Please, the Court, Your Honor. Seher Makarious for the petition. Your Honor, the facts of this case are very clear. The issue here is whether or not Taliban is being treated as a terrorist organization. The IJ and the Board of Governors Well, just a minute before we get to that, it seems to me that you have to show that your client suffered past persecution. Yes, Your Honor. Because that is your whole argument on future persecution. Your whole argument on future persecution is that somehow you had, if you will, a presumption of past persecution, and therefore you got something up on the government that they had to come forth with some evidence against it. And so, therefore, I'm looking at the past persecution. Now, your argument about the past persecution is that there were threats against your client and that they one time beat your client. Is that correct? Correct, Your Honor. Well, if that's all there is and that's the best you've got, I mean, I'm trying to say to myself at that point in time, how do I get around the cases which where we say that isn't enough, that simply threats and a one time beating are not enough? In this situation, Your Honor, we'll look at anybody in his same situation. Well, but I am. If I look at Bonder and Co. versus Holder, which is a 2013 decision, there were three detentions and severe beating, but there wasn't enough. In Vittung versus Holder, a 2013 case, there were personal threats and harassment and beatings, and it wasn't enough. In Guo versus Ashcroft, there were two arrests and detentions with a beating and a loss of a job, and that wasn't enough. So how is your case better than that? The difference is the persecutor, Your Honor. The difference is the persecutor? Yes, Your Honor. If a gang member tells me ---- Where do I find the case that would suggest that the difference is the persecutor? I don't have a case law, Your Honor, but ---- Well, if you don't have a case, then how am I supposed to get there? We create one, Your Honor. Oh, you want me to make it. Oh, I see. Okay. Your Honor, the ---- I mean, my worry is that if you don't have past persecution, and I looked very carefully at your brief to see what you were arguing was the past persecution, and you all say it's a threat and you say that it's a beating, but that's the best you say in your brief. And so, therefore, I'm saying to myself, I don't know that there's any past persecution here. Now, that doesn't end your case because then we go to future persecution, and you have a burden now on future persecution. You just can't say I got a presumption. You got a burden to meet. So what are the things, what is the ---- I mean, they say there is no future persecution. At this situation, Your Honor, I look at the hypothetical of the driver who used to work for the petitioner, and we ask, if he came earlier before he was killed and we denied him asylum and he was sent back to his country and he got killed, wouldn't that show clearly that the threat is very serious? Why are we engaging in a hypothetical? My understanding is different on past persecution. My understanding is the Taliban threatened his employee and said, we want that bus because we want to use it to blow up the school. They couldn't get close to the school, couldn't get through the gate, unless they use a bus with schoolchildren to blow up the school. Then they paid a house call because the employee refused to give him the bus and said, no, Samad owns the bus. They paid a house call to Samad's home and beat him with rifles when he refused to give him the bus to allow them to carry out their terrorist bombing. The beating with a rifle, Your Honor, is not just the physical beating. It's showing the kind of tools. Yes, I understand. I understand they used the butts of their rifles. Then he reported this to the police. Then the police arrested the Taliban leader. Then reportedly the police killed the Taliban leader. Then the Taliban killed his employee while he was filling up the bus at the gas pump. Isn't that right? Correct, Your Honor. But isn't that something you never argued? Which is, Your Honor? I did never see any argument in your briefs that suggests that what happened with the employee related to the past persecution. Where did you argue that? I looked through your brief. The best I can see is the beating and the threat one time to your client. Nobody argues about what happened with the employee as it relates to past persecution. I couldn't find it. Neither could the IJ. Neither could the BIA. The threat is very severe and serious, Your Honor. That by itself, we don't have to wait for people to be killed to grant them asylum. But you're focusing on a different point, it seems to me. The IJ's reason for denying this, I think, is that they likened this to refusing to participate in criminal activity as opposed to terrorist activity. How can we agree with the judge by calling Taliban's behavior as a criminal activity? My question for you, sir, is was that the basis for the IJ's ruling that this wasn't past persecution because he was refusing to participate in a criminal venture? That's correct, Your Honor. And nobody in the world will agree with the judge that the Taliban is a criminal group. It's not a criminal group, Your Honor. This is a terrorist group. Otherwise, Malala Yousafzai should not have got the Nobel Prize for fighting against the Taliban. Even if it is a terrorist organization, what the question is, what were they asking him to participate in? They were asking him to participate in what he perceived as a criminal activity is what the immigration judge said. So can't a terrorist organization participate in a criminal activity? As in the SPGA, Your Honor, if there are double motives, one of them is under the protected ground. That would be sufficient to grant the asylum. That premise, though, is that your premise basically, it seems to me, is that because the organization is widely known as a terrorist, that the activity, action or gang or group, that the action in which it engaged was necessarily terrorist. And our immigration judge found that that wasn't the case, that what they were, even though they were who they were, they were engaged in a criminal activity. In criminal activities, Your Honor, there is a gain for that group, financial or whatever. But in this situation, the terrorist organization wanted to promote their agenda, halt the education of children, especially girls. That's the goal of bombing the school. Is there any indication in the record that this plot that they had had a financial incentive, where there's going to be a ransom or something to ransom the children or kidnap the children? Absolutely not, Your Honor. That's what it shows. It's not a gang-related activities. So you're relying on that, though. I mean, to answer Judge Payne's question, you're relying on that to infer that it was terrorist as opposed to criminal. Is that right? Correct, Your Honor. In order to suggest that it's a, if you will, social group, you've got to suggest what the group is that you belong to. It seems to me that your argument is that your client belongs to a social group of health workers and education workers, that that's the group. I don't see any immutable or innate characteristics between those members in order to make a group. So how do I use that as the social group? I believe, Your Honor, in the Ahmed's case where this court decided the just opposition of the distribution of food was sufficient. I believe also there's another case under El-Sahir. It indicates almost the same, that I don't have to belong to a group that isn't defied, just my opposition. That could be enough. You have to show, as I understand it, in order to have this social group, an immutable or innate characteristic in this group. And the only group you've suggested is health workers and education workers. I look at the mind of the persecutor, which also I believe is decided. Wait a minute, wait a minute. That was a question, and I have the same before you answer. I think you're missing the question. Yes, Your Honor. Because there's quite a bit of transcript testimony about this. Are you claiming imputed political opinion or not? Or are you only claiming health workers and education workers? So we need to know that. Are you claiming that or not? Yes, Your Honor. And I can identify how that is the mind of the persecutor, which can be imputed. In another case, I cannot put my finger on it. If I look at it quickly, I will find it. It's in my brief, indicating that we have to look at the mind of the persecutor. Where is the persecutor? Consider this person. You need to think a little bit about what Judge Kristen just asked you. Okay. What she's saying is the group, the health workers and education workers, is that the group? Correct, Your Honor. I just asked you a different question. You gave me the opposite answer, and this is very important. Yes, Your Honor. I'm sorry. In the transcript, I.J. asked you the same question or asked your client. I don't think you were there. But asked whether or not you're also claiming the persecution was on account of imputed political opinion. I really need to know the answer to that question, counsel. Yes, Your Honor. The answer is yes. The imputed political opinion is he promoted the education of girls, which is something very obvious that the Taliban is against that. So how do we get to the imputed political opinion if there is one? As I understand it, in this particular situation, your client was the bus man who bussed people to school. The Taliban came and asked to use the bus, and he wouldn't do the bus for them. Then he went down to the police. They beat him. He went down to the police and told them that they beat him. How do we get that? How do we make that an imputed political opinion simply because the Taliban beat him for not bussing the people they wanted him to bus? I look at the Taliban's agenda, and I see, as I mentioned earlier, in Malala Yousafzai, she was granted the Nobel Prize because she was promoting education against the persecutors' agenda. But he wasn't. He was by his behavior, Your Honor. But he had, according to the record, I thought he had formerly been involved in health work and formerly been involved in education, but he was not at the time this event occurred. And you're asking us to impute a political opinion backwards and bring it forward to a time of the event. And I have some trouble understanding how that can be done. The health worker, it shows what his belief is in general. Well, that means, then, that the Taliban has to know that. The evidence that the Taliban knew that he had been a health worker and an educational worker? In this kind of areas, Your Honor, everybody knows everybody's business. Counsel, you have the burden of proof, and it's really difficult to understand your theory. And we're trying here. You've got a transcript that makes very clear and forms that make very clear that your client made this claim. We're not making it up. We're trying to connect the dots. Health care, educational worker, Your Honor, is still working for serving the school system. He is not working as a teacher. Is he an education worker at the time of this because he's driving the bus, or was he a former education worker? Judge Payne's question is important. No. He is driving a bus. That's how we can call him an educational worker. Commercially. It's a commercial institute. He's not working for the school system. Correct, but he's promoting what the ideology of educating the children. Sir? Yes, Your Honor. Was that his occupation at the time of these events, or was it former? That's what Judge Payne wants to know. No, that was his job during the attack, Your Honor. Thank you. Thank you, Your Honor. Do you want to reserve the bulk of your time? I don't know. Oh, this is your over. I'm sorry. Forgive me. You're over. Thank you. Thank you, Your Honor. We hear from the government. Thank you, Judge. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Alexander Lutz for the respondent. Your Honors, in an oral argument just now, it seems that Mr. Samad's position is that the very identity of his attackers, being members of the Taliban, without more, transmutes his past experience to the level of persecution or creates a nexus. It's not his argument, counsel. If you could go right to the bulk of his strongest argument, that's what would be most helpful to me. His argument is he got a threat from the Taliban that they were demanding that he Could you give us the government's response to that? Sure, Your Honor. I think your question gets to the issue of nexus. And the answer there is that substantial evidence supports the agency's finding, which is that their motive was not to harm Mr. Samad on account of any protected ground, not his religion, not his political opinion, not his membership in a particular social group. Rather, their motive to target him was because he had school buses that they wanted. They wanted it for a plot to blow up school children. So the I.J. I am struggling with this part. The I.J. said, well, that could just be a criminal activity. He's refusing. They found him credible that he refused to participate in this criminal activity as opposed to a terrorist activity. Could you tell me why should we view this as a criminal activity rather than a terrorist activity, since there's no profit motive? Well, Your Honor, respectfully, I don't read the immigration judge's decision that way. I think what the immigration judge is saying in that paragraph of his decision is that they're targeting Mr. Samad not because of his political opinion or his religion or a membership in a group, but rather just to get these buses. And they're punishing him for not giving him the buses. And I don't believe that the distinction between whether that's criminal or terrorist is relevant, because neither one of those is on account of a protected ground. Why isn't it imputed political opinion, counsel? It's not imputed. He's opposing the Taliban in their efforts to they're not just a criminal gang. Well, Your Honor, the immigration judge didn't indicate that they were a criminal gang. In fact, we actually responded to this argument, I think, in our brief. The petitioner's point there is just that the immigration judge cited Santus Limas, which was a case about criminal gangs, but the immigration judge didn't mistake the Taliban for a gang. And his point in citing that case was merely that punishing someone for refusing to comply with a demand doesn't necessarily create a nexus to a protected ground. Right. Okay. But we're still not getting to my question. I think it's the one that we're all struggling with. Okay. It seems very far-fetched to me. Maybe that's unfair, but it is certainly surprising to me that someone would describe the Taliban's plot, which we must take as credible, that's what I.J. found, that there was a plot to blow up a bus full of schoolchildren by the Taliban and that we would treat that as criminal activity as opposed to terrorist activity. What's the strongest argument that the government has that this was a reasonable finding, that the record does not compel a contrary conclusion? Because, Your Honor, the immigration judge is not framing this as criminal versus terrorist. He's framing this as criminal versus on account of a political opinion, criminal as opposed to. . . I get that. Okay. We have all these country reports, including from the Department of State, that talks about the Taliban's goals and mission and how contrary they are to educating schoolchildren, especially girls. So can you help me with that? Your Honor, this is Elias Zacharias. I think that's where Your Honor's question is going. Is that? Forgive me the name. INS versus Elias Zacharias. Yes. Okay. So in Elias Zacharias, this court, prior to being reversed by the Supreme Court, had reached a holding that's similar to what I think Mr. Samad is pursuing here and I think what's behind Your Honor's question. There, the court had held that opposition to a group with a political goal creates a nexus to a protected ground because that opposition itself either expresses or creates the imputation of a political opinion. And the Supreme Court reversed that finding. They said, listen, what we're looking for is persecution on account of the victim's political opinion. There are a lot of reasons to oppose a political organization other than opposition to its political goals. I think the example the Supreme Court gave. His political opinion, I guess, if he were here, would be that he is favoring educating young schoolchildren, including girls. Well, Your Honor. That was his work. That was his mission. Well, I think that's a fair reading. Why is that inadequate? Well, because, Your Honor, that's not what the dispositive question is. The question is when these members of the Taliban targeted Mr. Samad, were they trying to punish him for a political opinion? Were they trying to punish him for a religious view? They were punishing him because he didn't give them the buses. We know that because that's what Mr. Samad testified. He did. Thank you, Your Honor. So let me go further. So the fact that he owns the buses and he drives children to school, that wouldn't give us the political opinion or the motive. So when the Taliban first came and beat him, there was probably no motive. What worries me are these facts. Thereafter, he turned these people in. This ultimately resulted in his driver's death. There is thus a possibility, it seems, that the motive became an imputed political opinion at that point where he had gone in. He turned them in. He had done what he had to do, and therefore, it might be an imputed political opinion. I can understand you're going to say, well, just personal revenge, not enough. But what if it became an imputed political opinion by turning them in, not only turning them in for beating him, but turning them in and saying you ought to go do something about this? Does this make it something better? Respectfully, Your Honor, no, I don't think so because we would need facts in the record to compel that conclusion. I think the theory that Your Honor is tracing out is what if the Taliban were to target him because, well, let me put it this way, in order for that theory to be supported by the record, we would need evidence, number one, that these members of the Taliban knew when the military retaliated against them that it was Mr. Samad who had turned them in, and we would need evidence that that was why they had targeted the driver as opposed to just Mr. Samad's and the driver's refusal to give them the buses. Well, I guess that's a great argument, but I guess the worst question, or the one you've got to report to me, is why do I make that decision now? Why don't I just return it to the BIA and the IJ to make that decision? Well, Your Honor, in order to reverse and send it back, we would need to find that the record compels the conclusion that Your Honor just made. It does not address this particular issue. Well, you know, I'd return to something that Your Honor asked Mr. Samad's counsel a moment ago, which is that he really hasn't set forth in his briefing or before the agency a theory linking the subsequent death of Mr. Ghul, the driver. Oh, in other words, I made the link, but nobody else has? Is that what you're saying? I'm saying Your Honor is—  He means me. He means me. I don't mean either of you, Your Honors. What I mean to say, Judge Smith, is— But it is also the law that we look at the facts. We recognize this person's testifying between an interpreter. There is certainly circumstantial evidence here that connects the dots pretty strongly, even strongly enough that Judge Smith is pausing. And we give each other a hard time. It's our habit, and that's why he's a wonderful colleague. But truly, this is the thing we're grappling with in all sincerity, and we take these standards very clearly. So what's your best shot? Well, Your Honor, I would just draw the court's attention to its opinion in Singh in 2014. That's a case that gives us an example of the type of evidence we look for to see whether an attacker's conduct is driven by a political opinion, imputed or otherwise. We could see direct evidence in that case, for example. But we also have cases that say you don't have to have them come in and say and articulate in words, you know, we're retaliating for you because. That's absolutely right. You turn them in, the police apparently killed the Taliban leader, they respond by killing the bus driver. How tough is it to connect those dots? Well, Your Honor. Is it your argument there was a lengthy period of time? No, Your Honor. I don't think there was. My argument is that we can surmise that that might have been the case here, but there isn't evidence in the record that compels that conclusion. And I understand Your Honor's point that not every attacker says here's why I'm attacking you. We don't get direct evidence in every case. But Singh also gives us an example of what kind of indirect evidence we could look for. I mean, in that case, for example, the victim was associated with a person that the government viewed as being a Kashmiri terrorist, and as soon as they got the victim into the interrogation room, the attacker started accusing the victim also of being a Kashmiri terrorist. That kind of circumstantial evidence, it doesn't need to be a direct statement, here's why I'm targeting you, but we can get circumstantial evidence that shows a connection. Here, the only evidence in the record when it comes to the death of Mr. Ghul, the driver, is that after Mr. Samad was threatened, he reported it to the principal. The principal reported it to the military. The military captured someone who was in the Taliban and killed him, and later on other members of the Taliban shot Mr. Ghul. While he was refueling the bus. While he was refueling the bus that he had refused to give them earlier when they demanded it. So we would need something more than those facts to conclude that the record compels connecting the dots in that way. Thank you for your answer. I appreciate it truly. Judge, do you have additional questions? Do you agree, after having read the briefs, that the decision of the IJ and the BIA is wrong with respect to withholding because they didn't apply the Barajas-Romero rule? Have you been convinced by all the cases that have gone the other way since then? No, Your Honor. I'm not convinced of that. I think that the agency got it right in this case, and I point out that Barajas-Romero itself distinguished another case from this court, which was Zatino, on the basis that that case wasn't a mixed motive case. It was an either-or case, and that's what we've got here, too. We pointed that out in our answering brief. In order for the distinction between because of for withholding of removal and on account of for asylum to make a difference, in other words, in order for us to get into Barajas-Romero territory, we've got to have a mixed motive case, which is a case where the immigration judge finds there are multiple possible motives here, and then he or she says, so now we have to go to the additional step of figuring out which one predominated. But this isn't that case because here the immigration judge said, we can tell what their motive is. It's that they were upset at Mr. Somaya because you wouldn't give them the buses that they wanted. And we know that it wasn't anything else because we do know what it was. So it's not a mixed motive case where we're figuring out which one predominates, and that's why Barajas doesn't control. Thank you, counsel. Thank you, Your Honor. Thank you both for your helpful argument.
judges: N.R. Smith, Christen, Payne